## 4216. McCULLOUGH v. THE STATE.

1. Where an assault is committed by a negro man upon a white woman, difference in race, and social customs founded thereon, may authorize an inference that the assailant did not expect the woman assailed to yield to his lustful embraces without the use of such force as would make the offense that of rape; but such an inference is not conclusive; and it is error to refuse to charge the jury, where the facts and circumstances warrant such an instruction, that if the assailant, at the time the assault was committed, intended to desist as soon as he ascertained that the woman assailed would not consent, he would not be guilty of assault with intent to rape.

2. An instruction in the following language is substantially correct: "There is some evidence as to good character, and on that subject I charge you this: Where the guilt of the accused is made to appear to the satisfaction of the jury, they are authorized to convict, regardless of the good character of the accused, but the jury have the right to consider his good character not merely when his guilt is doubtful under the testimony in the case, but when such testimony of good character may itself generate the doubt."

3. Ordinarily, sayings and conduct of the prisoner in his own favor several hours after he is alleged to have committed the crime are not admissible upon his trial. On account of difference in race, and social customs founded thereon, juries are permitted to infer that a negro man who assaulted a white woman did not expect her to yield to his embraces without the use of force sufficient to overpower her will. Based upon the same social conditions and the characteristics of the negro race, an inference may also arise that a negro man, consciously guilty of an attempt to commit a rape upon a white woman, would not quietly spend a night and a portion of the next day in a house on the farm of the husband of the woman, in close proximity to her neighbors and friends, without exhibiting some symptom of fear or excitement. Proof that he did these things, and that he openly acted in a manner to indicate no consciousness of guilt, is admissible upon his trial for assault with intent to rape, to be considered by the jury in connection with other facts and circumstances in the case upon the question of felonious intent.

4. The motives which lie at the foundation of a criminal prosecution may always be inquired into for the purpose of illustrating the bona fides of the prosecution. Sayings of the prosecutor which, if true, indicate that the prosecution is instituted in bad faith, and which also affect the credibility of his testimony, are admissible in evidence.

5. While, in the trial of a criminal case, it is the right of counsel for the accused to read, in the hearing of the court and jury, such decisions of the courts of this State as he may deem pertinent to the question involved in the case, it is not the right of counsel to read to the jury a discussion by the reviewing court of the facts of the case on trial, as contained in an opinion delivered by that court when the same case was before it on a previous occasion.

6. An assignment of error in a motion for a new trial, that a sentence,

within the limits fixed by law, is excessive and too harsh under the facts and circumstances of the case, presents no reason for interference by the reviewing court.

DECIDED OCTOBER 2, 1912.

Indictment for assault with intent to rape; from Gordon superior court—Judge Fite. April 27, 1912.

*O. N. Starr*, for plaintiff in error.

*T. C. Milner*, solicitor-general, *Sam P. Maddox*, contra.

POTTLE, J. This is the second appearance of this case in this court. *McCullough v. State*, 10 *Ga. App.* 403 (73 S. E. 546). The evidence in the present record is substantially the same as it was before, and we repeat what was said before,—that while the evidence, considered in the light of the surrounding circumstances, suggests grave doubt as to the guilt of the accused of the offense for which he was convicted, we would not feel justified in holding, as a matter of law, that the verdict has not some evidence to support it. Evidently the jury shared this doubt, because they deliberated some fifteen hours before reaching a conclusion. We have no disposition to enter the jury box. They have their function and we have ours. Theirs is to find the facts and ours to decide the law and see that the accused has had what the constitution and laws of this State guarantee him, viz., a fair trial before an impartial jury. No other trial is recognized by our law and none other will bear the test of judicial review. Conceding, as we do, the truth of the testimony of the woman alleged to have been assaulted, the guilt of the accused rests only upon an inference supported by the ruling stated in the first headnote of the former decision,—an inference of felonious intent which, in view of the difference in race between the parties, and social customs founded thereon, a jury may draw, where a negro man assaults a white woman; and the record must be examined to see whether, when considering this fact, the jury were given an opportunity to fairly and impartially weigh the facts and circumstances tending to show that an inference of felonious intent was not well founded.

1. The court refused requests to charge the jury as follows: "If the defendant went into the barn or crib where Mrs. Fowler was, with intent to desist as soon as he found out that she would not consent, he is not guilty of the charge, and the jury will so find." "Before you would be authorized in finding the defendant guilty of an assault with intent to commit rape, the evidence should

show that the defendant not only made the assault, but that it was his intent at the time, forcibly and against her will, to have carnal knowledge of the person assaulted." "In order to authorize a conviction for the offense of assault with intent to rape, the evidence must show, beyond all reasonable doubt, (1) an assault, (2) an attempt to have carnal knowledge, and (3) a purpose to carry into effect the intent with force, and against the consent of the female. If any of these three elements is lacking, the offense is not made out." In the general charge the jury were properly instructed substantially in the language of the first headnote of the former decision, that they might consider the difference in race and social customs between the accused and the alleged victim. This court is entirely satisfied with the correctness of this principle. It means simply that where a negro man assaults a white woman, the jury may, on account of the difference in race and social status of the parties, infer that the assailant did not believe his advances would be acceptable. This is, however, by no means a conclusive presumption. It is merely an inference which the jury may, but which they are not compelled to draw. As men, if sitting as jurors, we might also draw the inference, but sitting as judges we are bound to hold that the accused was entitled to have the converse of this proposition stated, viz., that if the jury believed that notwithstanding this difference in race, the accused intended to desist as soon as a show of resentment was made, he would not be guilty of assault with intent to rape, and that the fact that he did so desist was a circumstance to be considered in passing upon this question. In view of the fact that the court charged in the language of the first headnote of the former decision, and also charged that the jury might convict even though the accused desisted from fear or other cause, if they believed he had the felonious intent, instructions of the nature indicated in the foregoing requests should have been given. The request last above quoted is in substantially the language of the first headnote in the case of *Dorsey* v. *State,* 108 *Ga.* 477. It is to be noted that that case was one in which a negro man was convicted of having made an assault upon a white woman, with intent to commit a rape. It was held that, applying the principle announced in the first headnote, the evidence was not sufficient to authorize a conviction. The case of *Taylor* v. *State,* 50 *Ga.* 79, is directly in point. In that case it appeared that the accused,

in the nighttime, entered a room in which a young woman was lying in bed. He approached the bed, threw off the cover, and touched the woman on the lower portion of her person. She immediately gave the alarm and the accused escaped through the door. His counsel requested the court to charge the jury as follows: "If the defendant went there with intent to desist as soon as he found that the woman would not consent, then he is not guilty of the charge and the jury will so find." The request was refused, and the conviction was set aside for the sole reason that the trial judge declined this request. In the opinion, which was delivered by Judge Trippe, it is stated that while the law is that if the defendant intended to forcibly know the female carnally and against her will, and made an effort to accomplish this purpose, the mere desistance, either from fear or other cause, would not relieve him from guilt of an assault with intent to rape, yet that, under the facts of the case, he was entitled to have an instruction given of the nature above indicated,—that is, that if he intended to desist as soon as he found that the woman would not consent, he would not be guilty. In the present case the charge as given otherwise fairly presented the issues, but we think the trial judge fell into error in refusing to charge as requested.

2. Complaint is made of the following charge: "There is some evidence as to good character, and on that subject I charge you this: Where the guilt of the accused is made to appear to the satisfaction of the jury, they are authorized to convict, regardless of the good character of the accused, but the jury have the right to consider his good character not merely when his guilt is doubtful under the testimony in the case, but when such testimony of good character may itself generate the doubt." This charge was substantially in accord with the decision in *Shropshire* v. *State,* 81 *Ga.* 589.

3. It appeared, from the evidence, that the assault was alleged to have taken place late one afternoon; that the accused worked as a farm-hand and lived on the farm of the husband of the woman alleged to have been assaulted; that the accused spent the night at home, and no effort was made to arrest him until the next morning, when an officer was sent for him with a warrant. The accused sought to show that the officer found him at home in quiet and peaceful pursuits, without symptoms of fear or excitement. When evidence of this nature was offered the court remarked: "Stop

right there now. I am not going any further. You can show he was right there at the house, but it is immaterial what he was doing or did after the occurrence." Ordinarily, evidence of the sayings and conduct of the accused the next day after the crime was alleged to have been committed would not be admissible in his favor, but under the peculiar facts of this case we think it should have been admitted. We have said that on account of the difference in race between a negro man and a white woman, and social customs founded thereon, the jury may draw an inference of an intention to commit a rape, arising from a bare assault committed by a negro man upon a white woman. On the other hand, we can not shut our eyes to other well-known characteristics of the negro race. Knowledge of social conditions and the differences existing between the races might authorize the conclusion that a negro man who was conscious of attempting to commit a rape upon a white woman would not likely, after such an assault, go quietly to his home near the place where the woman assaulted and her relatives and friends lived, and there peacefully and quietly remain during the night and a portion of the next day, engaged in an occupation which indicated no symptom of excitement or fear, and no expectation that he would be called to account for a criminal act. We by no means intend to hold that such circumstances would require a finding that the accused was not guilty, but it does seem to us that the jury ought to be allowed to consider all of these facts and circumstances in passing upon the question of criminal intent. The alleged victim of the assault spent two hours at a neighbor's house, across the road, immediately after the assault was claimed to have been committed. She did not appear excited, and she said nothing to her neighbor in reference to it. She referred the matter to her husband when he returned home at night, and, notwithstanding the fact that the negro was on the husband's farm but a short distance away, no attempt was made to apprehend him during the night, and he was allowed to spend the night on the farm without molestation. The husband testified that he was prevented by one of his neighbors from going to the negro's house the night before, but it does not appear that any force was used to prevent him from going. It seems to us that the fact that this negro went quietly to his house and there remained during the night, and the fact that he arose the next morning and remained at home without indicating any

symptoms of fear or excitement, were facts which might well have been considered by the jury in connection with other facts and circumstances, in passing upon the question of criminal intent.

4. Fowler, the husband of the alleged victim of the assault, appeared on the indictment as prosecutor. He was also a witness for the State. One ground of the motion complains that the court refused to permit proof that Fowler had said, some time previous to the commission of the alleged assault, that he wanted to get his tenant's crop pitched, and that after he got it pitched he wanted to run him off and take charge of it. The ground of the motion complaining of this ruling of the judge is somewhat indefinite. From the argument made it is apparent that counsel for the accused was endeavoring to prove that Fowler had made this statement with reference to the accused. If this is a fact, we think the evidence was admissible. It is always permissible to inquire into the motive which lies at the basis of a prosecution, in order to illustrate its bona fides. There is some evidence in the record that after the accused was arrested, Fowler did take charge of some of his property without any authority of law for so doing. If he made the statement accredited to him, the jury had a right to know and consider it upon the question of the bona fides of the prosecution, as well as upon what credibility ought to be attached to his testimony.

5. During the argument of counsel for the accused he claimed the right to read to the jury portions of the opinion of the Court of Appeals, handed down in this case when it was before the court at a previous term. The court ruled as follows: "You can read all or any of the headnotes, or you can read all of the opinion, but you can not read parts of the opinion and the facts connected therewith." There was no error in this ruling. Counsel had a right to read the opinion of the court in the presence and hearing of the jury, but he did not have a right to do what he seems, from the court's ruling, to have desired to do,—i. e., read only those portions of the opinion of the court dealing with the facts of the case. It is not the province of the trial court, nor of the reviewing court, to control or influence the jury in its finding upon disputed issues of fact. Ordinarily the reviewing court does not discuss the facts of the case, save in so far as a discussion of the facts may be necessary in the determination of questions of law. Such discussion would not be helpful to the jury, nor is it proper to read to the

jury isolated expressions of the reviewing court upon the facts in the same case.

6. Complaint is made that the sentence of twenty years at hard labor in the penitentiary is not justified by the facts. The penalty for assault with intent to rape is from one to twenty years in the penitentiary, within the discretion of the trial judge. If there are extenuating circumstances, the law contemplates that the trial judge will, in his humanity, give the accused the benefit of them. If he sees fit, in his discretion, not to do so, this court has no right to interfere. The foregoing discussion deals with all the assignments of error which we think it necessary to discuss.

Other than as indicated above, we find no error of law in the record. The errors, however, which we have pointed out are of such a character as in our judgment to demand a new trial.

*Judgment reversed.*