36062. CITY OF COMMERCE *v.* BRADFORD.

Decided July 11, 1956—Rehearing denied July 31, 1956.

R. F. Schuder, Wheeler, Robinson & Thurmond, E. C. Stark, T. J. Syfan, for plaintiff in error.

Kermit C. Bradford, Davis & Davidson, contra.

NICHOLS, J. ■ The defendant City of Commerce made both written and oral motions in the nature of a general demurrer to dismiss the plaintiff's petition, which were overruled by the trial court. It will be noted from the statement of facts that the petition alleges that the planks forming the walkway were defective, in that the ends were eaten by rot and rounded off, but they were well and firmly embedded in the soil until about February 1, 1953, when the city, in scraping the gutter and deepening the ditch at that point, removed the walkway and negligently replaced the three planks "not in the same position or place before occupied, but merely lying loosely upon the top of the piles of dirt. . . It . . . would now rock and roll under use if

not embedded in the soil; yet the defendant, through its officers, agents, servants and employees, knowing of the danger incident thereto, failed to . . . securely fasten down said planks." The petition accordingly charges the defendant with actionable negligence in that it did not return these planks to the same security of position that they had before removal by the city, although the appearance to the casual observer would have been the same.

As against general demurrer, the petition sets out a cause of action for the reasons herein specified.

■ It is insisted that the general grounds of the motion for a new trial are meritorious in that the verdict is not supported by evidence, and in this regard counsel for the plaintiff in error rely especially upon *Crawford* v. *Mayor &c. of Griffin,* 113 *Ga.* 562 (38 S. E. 988), wherein the plaintiff, injured by falling through rotten planks in a bridge extending between the street and a sidewalk over a drainage ditch, sought to predicate liability on the city on the ground that the city, which had previously taken up the bridge and replaced it, and had made some repairs on it, was liable for *maintenance* of a defective bridge. It was there held that the bridge was not a bridge at a regular public crossing and accordingly the city was under no duty to maintain it. If nothing else appeared in the case at bar the *Crawford* case would of course control, but more than defective maintenance is here alleged against the city. It is further charged that these planks, which were defective because rotten and therefore rounded off at the edges, were in the first instance firmly embedded in the soil so they would not roll with the weight of one walking over them; that they were removed by the city and replaced "without securely fastening them down" and that they accordingly rolled with the weight of the plaintiff and threw her off balance causing her fall. The planks, defective as they were, would not have injured the plaintiff had they been replaced in the soil in the same manner as they were before being removed, and the negligence with which the city is chargeable is negligence in the manner of their replacement. This was pointed out when this case was here before (*Bradford* v. *City of Commerce,* 91 *Ga. App.* 581, 86 S. E. 2d 645) and the evidence as to this allegation of negligence is substantially the same as it was on the former trial, where it

was held error to grant a nonsuit because there was in the record testimony substantiating this allegation of negligence. As stated in *Jones* v. *City of Atlanta,* 142 *Ga.* 151 (1c) (82 S. E. 540): "If in the exercise of the corporate powers of the municipality, in widening and changing the grade of one of its streets, the city through its agents and employees acts so negligently as to cause personal injury to one who lives upon a lot abutting on the street being improved, and who is lawfully passing to and from such lot, a cause of action arises to such injured person." There the city, in widening the street, removed a piece of fencing and stood it up in a negligent manner so that it toppled over and injured a person going from her home to the street. There is evidence to support a finding that the insecure position of the planks caused the plaintiff's fall, and that the planks were insecurely placed by municipal employees. Accordingly, the general grounds of the motion for a new trial are without merit. This is true whether or not the petition was duplicitous in further attempting to charge the city with negligence in failing to properly *maintain* its bridges and walkways, and whether or not this allegation of negligence was supported by any proof.

It is further contended that the evidence demands a finding that the plaintiff is precluded from recovery by the provisions of Code § 105-603 in that she failed to exercise ordinary care for her own safety. The evidence in the case shows that while the plaintiff had crossed the walkway safely previously to her fall, and while others had also crossed it safely, nevertheless the plank on which the plaintiff stepped like the other planks had the appearance of offering a safe footing and there was nothing to warn her that it was loose and would roll under her weight. Recognizing the rule stated in *Georgia Power Co.* v. *Maxwell,* 52 *Ga. App.* 430 (3) (183 S. E. 654) that the plaintiff in order to recover must have exercised ordinary care to avoid the consequences of negligence either actually discovered or which in the exercise of ordinary care might have been discovered, there is evidence in the record to sustain a finding that the plaintiff was not put on notice, either at the time she was injured or on a previous crossing, that the plank was defective on the underside so that because not firmly embedded in the soil it would roll with her weight, and that the defendant in replacing the plank did know it was

defective on the underside and accordingly should have known that if not firmly embedded it would roll with the weight of a pedestrian. Accordingly, the defendant was not entitled to a directed verdict on the theory that the plaintiff failed to exercise ordinary care for her own safety. It follows that the motion for judgment notwithstanding the verdict was also properly denied.

■ Having held that the petition set forth a cause of action and that the verdict was supported by evidence, it follows that the trial judge did not err in overruling the defendant's motion for a directed verdict and motion for a judgment notwithstanding the verdict, both of which motions were predicated upon the contention that the evidence as to the material issues of the case was insufficient to establish prima facie the essential elements of the right of action asserted in the petition.

■ The first special ground of the motion for new trial excepts to admission of evidence by the surveyor that Mrs. Owens's lot did not extend to the edge of the ditch but that there was a narrow strip of land between her lot and it. The effect of the testimony was to show that the end of the planks from which plaintiff fell did not rest on the Owens property, and there was testimony by the witness also tending to show that the narrow strip was not part of the Owens lot. The evidence was irrelevant because the petition alleged one end of the planks rested on Mrs. Owens's lot, but the objection was not on that ground and the question of relevancy is not before us. "Although there may be a ground of objection to testimony which would have been good if made, yet if the objection made be not good, it will be overruled." *Cox* v. *Cody & Co.*, 75 *Ga.* 175 (1a). The objection made was that the testimony tended to vary and contradict the deed under which Mrs. Owens held her property. The evidence was not in conflict with the deed because it did not purport to show that Mrs. Owens's lot did not extend to the street but simply that the street included the narrow strip of land and that the lot adjacent to the street was not at the side of the ditch but several feet therefrom. The evidence was not objectionable for any reason urged and this ground is without merit.

■ At this point we find it convenient to consider special grounds 2 and 3 for the reason that, like the general grounds, they require a thorough perusal of the record. The grounds com-

plain that the verdict was excessive. It is argued that the verdict was for $60,000, when the total amount prayed on account of plaintiff's loss of ability to work and earn money was $50,760, and that reduced to its value at the time the verdict was rendered this sum would be only $22,677.31; that the amount sued for, $50,000, as compensation for pain and suffering should also have been reduced according to mortality tables, and all the sums represented by the verdict together would not amount to the $60,000 awarded; that the plaintiff having recovered more than she sued for, the verdict is excessive. The fallacy of the argument lies in the fact that it cannot be ascertained from the record what portion of the amount recovered for pain and suffering was awarded as compensation for pain up to the time of the verdict or what amount of her recovery was for the pain and suffering she might experience in the future. It is true that it is indicated by the record that her suffering might continue into the future for a considerably longer time than it had existed at the time of the trial. But the jury could have concluded that her past pain was more severe than it would likely be over a more extended period in the future. The jury could have found the plaintiff entitled to $40,000 for the pain suffered from the time of her injuries until the time of trial and set the value of future suffering at $10,000. So that it cannot be determined whether the verdict exceeded the amount sued for. Having determined that the defendant's negligence as alleged in the petition was the proximate cause of plaintiff's injury, the jury then had to determine what amount would fairly compensate for it. The amount was to be commensurate with the gravity or triviality of the injury, being neither excessive nor inadequate. The record does not disclose that the jury did not undertake to perform this duty faithfully and impartially. We cannot hold that the verdict was, as a matter of law, excessive.

■ Special ground 4 complains of the following charge to the jury: "Now the plaintiff claims damages for pain and suffering which she says resulted from the injury which she claims to have sustained. It is impossible to produce evidence to a jury as to the amount of money that would be necessary to compensate a person for pain and suffering which she sustained either in body or in mind. And the law, therefore, says that the amount that

the plaintiff would be entitled to recover for pain and suffering must be left to the enlightened conscience of an impartial jury, such an amount as would under the circumstances of the case be in the minds and consciences of an enlightened and intelligent and impartial jury a sum which the plaintiff should recover as compensation and which would be properly chargeable to the defendant." The exceptions to the charge are (a) that it permitted the jury to consider the injuries to "the plaintiff's body" separately from her pain and suffering and as a distinct item of damages; (b) that it informed the jury that the plaintiff might recover regardless of whether the defendant was negligent; (c) that it was confusing; and (d) that it assumed the defendant was negligent. We do not think the charge permitted the jury to consider the injuries sustained by the plaintiff separately from her pain and suffering but we are of the opinion that the court referred to the plaintiff's injuries as a cause from which the plaintiff's pain and suffering might result. The court explicitly informed the jury in his general charge that the plaintiff could not recover unless she carried the burden of proving that the defendant was negligent as charged in the petition, and that such negligence was the proximate cause of her injury. Nothing in the charge complained of was to the contrary. The charge does not appear to be subject to the other criticisms made of it.

■ The same ground complains of another excerpt from the charge as follows: "Now, gentlemen of the jury, the plaintiff also claims damages for what she alleges to be a permanent decrease in her capacity to labor and earn money. You will look to the evidence and determine how much, if any, the capacity of the plaintiff to labor and earn money has been reduced on account of the injury. You will determine, if the evidence discloses the fact, what she would have probably been able to earn but for the injury, what she would probably be able to earn in the future and if she will be able to earn less in the future than she would have been able to earn without the injury then the difference between the two sums would represent the loss, if any, to her earning capacity by reason of the injury. You will find what would be the fair yearly value of the loss, if any, and multiply this amount by the number of years, if any, if the evidence discloses this decrease in earning capacity will continue. If you

find from the evidence that her decreased earning capacity is permanent then you would find what the evidence shows to be the plaintiff's average yearly loss on this account, if any, and multiply this by the number of years that you would find from the evidence she would probably have lived but for the injury. In either case this would give the gross amount of the loss due to decreased earning capacity. In determining this amount you take into consideration the fact that rarely, if any, that people's capacity to labor and earn money rarely, if ever, remain undiminished by old age, you also take into consideration that fact that men frequently voluntarily abstain from labor, and that loss of employment, dullness in business, sickness, voluntarily abstaining from employment, increased infirmities in age and other things independent of the alleged injury may contribute to diminish the gross amount of the alleged loss in earning capacity, you would then reduce this gross amount to its present cash value by any correct method known to yourselves, using the basis that money is worth 7% per annum interest, because if the plaintiff had earned the money she would have earned it from year to year as she earned it whereas if she recovers it in this case it would be paid to her in cash." The exceptions are (a) that the language, "Now the plaintiff claims damages for an injury to her body and she also claims damages for pain and suffering which she says resulted from the injury which she claims to have sustained," allowed the jury to consider the injuries to the plaintiff's body and her pain and suffering as separate and distinct items when in law they constitute one item only and should be compensated for as pain and suffering; (b) that to leave the amount to which plaintiff would be entitled to the consciences of an enlightened jury was confusing and susceptible of being construed as a charge the jury should give the plaintiff an amount recoverable as compensation and chargeable to the defendant as an insurer of the plaintiff and without regard to negligence of the plaintiff; (c) that the charge that the jury should look to the evidence and see how much the plaintiff's earning capacity had been reduced was error because it assumed the plaintiff's capacity had been reduced by the injury, and allowed the plaintiff, a married woman, to recover for loss of capacity to labor in her house work and for her family and did not limit recovery to loss

of salary or wages when working outside the home, the court having included all loss of labor capacity; and (d) that the court's charge amounted to an expression of opinion that the plaintiff's earning capacity had been decreased in the future by the injury, her life expectancy decreased by it, while allowing for compensation for years beyond her expectancy, the jury being required by the charge to even add salary for five or ten years after the plaintiff's death, altogether unsound as a matter of law.

There is no doubt that the act of 1943 (Ga. L. 1943, p. 316; Code, Ann. Supp., § 53-512), though intended to "emancipate" married women, except as to the natural fetters matrimony imposes, by vesting in them title to their earnings, nevertheless limited their right to "salary or wages." *Martin* v. *Gurley*, 201 *Ga.* 493 (39 S. E. 2d 878). So that the husband was not by the act divested of a right (an unnatural one) to whatever the wife earned except salary or wages or his very natural right to her domestic services. A charge that implied that a plaintiff married woman could recover for loss of ability to earn money, except as salary or wages, would be error. But the charge here complained of, an excerpt from the general charge of the court, is not susceptible of any other construction than that the plaintiff's right to recover for diminished earning capacity was limited to diminished capacity to earn salary or wages. The plaintiff sued for no other diminished capacity and offered no evidence of loss of earning capacity in any other way. The petition alleged: "That the loss of earnings derived from salary and wages being a fixed amount certain, and such loss being occasioned by total and permanent incapacity of your petitioner to labor and earn money derived from salary and wages now and in the future, resulting from the failure of duty and negligence of the defendant aforesaid, aggregating $50,760 according to the Carlisle Mortality Table, as a fair and reasonable compensation for the loss of what she would otherwise have earned in her profession employment as salary and wages, should be recovered by your petitioner from the defendant." The petition's only prayer recited: "That upon a hearing hereof your petitioner have judgment against the defendant for the amount of her injuries and damages, to wit: $50,000 as compensation for her pain and suffering, permanent impairment of her left hip, and $50,760 for total loss

of earnings derived from salary and wages, according to the Carlisle Mortality Tables, as a fair and reasonable compensation for the loss of what she would have earned as salary and wages in her profession and employment, or a total judgment of $100,760." Thus the jury could not have understood that the trial judge's instruction referred to any right of recovery by the plaintiff for loss of labor except loss of capacity to earn salary or wages.

■ Special ground 5 contends that the trial court erred in failing to instruct the jury without request as to the law of comparative negligence. It is error even in the absence of request to omit to charge on this principle of law only if both the pleadings and proof in the case present an issue as to whether the plaintiff's recovery should be reduced according to the rule embodied in Code § 105-603. *Pollard* v. *Watkins*, 51 *Ga. App.* 762 (181 S. E. 798). The plaintiff in error here contends that this issue was raised by the pleadings in that the plaintiff's petition alleges that her injuries were solely and proximately caused by the defendant's negligence, and the defendant alleged in its answer that "if the plaintiff suffered an injury it was due to her own negligence." Although it would seem that such a denial by the defendant might amount to an allegation that the plaintiff was guilty of some negligence (negligence on the part of the plaintiff being an affirmative defense) and although it has been stated that the better rule for the trial court to follow is always to charge on the issue of comparative negligence where the evidence would support a finding that it in fact existed, nevertheless we are constrained by decisions of this court and the Supreme Court to hold that these allegations, without more, do not raise the issue in the pleadings. In *Coble* v. *Georgia Motor Express*, 62 *Ga. App.* 566, 569 (8 S. E. 2d 724) it is held as follows: "Furthermore, neither the evidence nor the pleadings authorized the charge contended for. The plaintiff contended that the injury was due to the defendant's negligence, and the defendant contended that it was due to the plaintiff's negligence. For these reasons the failure to give the instruction contended for was not error, especially since there was no request therefor." The rule of law was apparently first applied as against unsuccessful plaintiffs who contended on appeal that they were injured by failure of the court to charge on contributory or comparative negligence.

See *Pierce* v. *Atlanta Cotton Mills*, 79 *Ga.* 782 (4 S. E. 381), wherein the court held that the plaintiff having contended she was without fault could not complain that the court failed to charge this rule of law. See also *Ingram* v. *Hilton & Dodge Lumber Co.*, 108 *Ga.* 194(6) (33 S. E. 961). Thereafter these and like cases were cited as authority for applying the same rule of law to defendants making the same complaint. In *Savannah Electric Co.* v. *Crawford*, 130 *Ga.* 421 (60 S. E. 1056) it was held that, where the plaintiff alleged that "he was in the exercise of all ordinary care and diligence, and in nowise contributed to the collision, which was due solely to the negligence" of the defendant, and the defendant alleged that "if the plaintiff . . . suffered any damage at all, it was due to his own negligence", under these pleadings "the law in respect to contributory (or comparative) negligence and the reduction or mitigation of damages was not, under the contentions of the parties, directly involved in the case" and a new trial would not be granted for failure of the trial court to charge on that subject. It must accordingly be held that the issue of comparative negligence was not raised by the pleadings in the case under consideration. Under the ruling in *Powell* v. *Berry*, 145 *Ga.* 696 (5) (89 S. E. 753, L. R. A. 1917A, 306), where this issue is not raised by the pleadings, and where further there is no written request for the instruction, failure to charge the rule of comparative negligence is not ground for a new trial even though it might have been authorized under the evidence. Accordingly, this special ground is without merit.

■ Special ground 6 excepts to the charge: "General damages are such as the law presumes to flow from any wrongful act which the law denominates a tort and may be recovered without proof of any amount. Special damages are such as actually flow from the act and must be proved in order to be recovered. The jury must determine general damages after considering all the facts and circumstances in the case." This charge was approved in *County of Bibb* v. *Ham*, 110 *Ga.* 340 (35 S. E. 656), in which case pain and suffering and loss of ability to labor and earn money are held to be general damages. The court had previously instructed the jury as to the specific and separate methods of arriving at just compensation for the two classes of general damages for which the plaintiff prayed recovery.

■ Ground 7 complains that the trial judge overruled a motion for mistrial and failed to reprimand counsel for the plaintiff who stated to the jury: "Gentlemen of the jury, this case has been tried once and the trial judge granted a nonsuit, but the Court of Appeals reversed that judgment and it is back now before you." If counsel had read the facts of the case (*Bradford* v. *City of Commerce*, 91 *Ga. App.* 581, 86 S. E. 2d 645), to the jury or had incorrectly stated the effect of the holding of this court on previous review of the case, the impropriety of such conduct would have been so grave as to require a reprimand or declaration of a mistrial. But under the holding of this court in *McCullough* v. *State*, 11 *Ga. App.* 612 (76 S. E. 393), there was nothing wrong in counsel reading the law of the case as adjudicated upon its previous appearance here. On page 617 of the case just cited, this court said: "During the' argument of counsel for the accused he claimed the right to read to the jury portions of the opinion of the Court of Appeals, handed down in this case when it was before the court at a previous term. The court ruled as follows: 'You can read all or any of the headnotes, or you can read all of the opinion, but you can not read parts of the opinion and the facts connected therewith.' There was no error in this ruling. Counsel had a right to read the opinion of the court in the presence and hearing of the jury, but he did not have a right to do what he seems, from the court's ruling, to have desired to do,—i. e., read only those portions of the opinion of the court dealing with the facts of the case. It is not the province of the trial court, nor of the reviewing court, to control or influence the jury in its finding upon disputed issues of fact."

■ Ground 8 complains that the trial court did not order a mistrial because the plaintiff's counsel argued to the jury: "Gentlemen, this woman has been injured severely. She is ruined for life, and what is more she cannot be a wife to her husband." The ground does not show there was a motion for mistrial or request that counsel be reproved by the court, but it appears the objection made was "that there was no allegation contained in the petition to that effect and no evidence offered in support thereof." When the court called attention to the fact that counsel for the defendant had complained that opposing counsel had made an argument not supported by the allegations of the petition, counsel

for the plaintiff withdrew the argument. The court then instructed the jury not to permit what had been said to influence their verdict, "and with that admonition I will overrule the motion" for a mistrial. The record does not show a motion had been actually made. While if objection is made to improper argument, it is not necessary that a mistrial be moved (Code § 81-1009), where there was no motion for mistrial, the objection interposed was mild, and the withdrawal of the offending argument prompt, and from the court's ruling the jury must have understood that the matter objected to was not for their consideration, it would be within the discretion of the trial court whether he would declare a mistrial. We do not think he committed reversible error in not so declaring. This is held for the reasons stated and in view of our conclusion that the matter argued was such as might have been inferred from the evidence and could have been pleaded by way of amendment.

*Judgment affirmed. Felton, C. J., Gardner, P. J., Townsend, Carlisle and Quillian, JJ., concur.*